# THE

# New York Supplement

## VOLUME 44.

### AND

## New York State Reporter,

## VOLUME 78.

---

(15 App. Div. 329.)

### VITTO v. FARLEY et al.

(Supreme Court, Appellate Division, First Department. March 5, 1897.)

MASTER AND SERVANT—FELLOW SERVANTS—FOREMAN.

A foreman in charge of an excavation acts as a fellow servant of a laborer employed to drill holes for blasts, in directing him to draw an unexploded blast, without notifying him that it contained dynamite as well as powder. 36 N. Y. Supp. 1105, affirmed.

Appeal from court of common pleas, trial term.

Action by Giacomino Vitto against Patrick Farley, in which there was a verdict in favor of plaintiff. Defendant died after verdict, and the action was revived and continued against John J. Keogan, as executor, and Mary A. Ryan, as executrix, of his will. From an order granting a motion for a new trial, made on the minutes (36 N. Y. Supp. 1105), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward W. S. Johnston, for appellant.
Edwin F. Stern, for respondents.

WILLIAMS, J. The action was brought to recover damages for personal injuries to the plaintiff, alleged to have been caused by the negligence of the defendant's testator, who has died since the verdict was rendered, and the new trial ordered. The ground upon which the new trial was ordered was that the negligence which caused the injuries was that of the foreman of the defendant's testator, and that he was the co-employé of the plaintiff in such a sense that no recovery could be had by reason of such negligence. The jury passed upon

44 N.Y.S.—1

the facts favorably to the plaintiff, and the court, in ordering the new trial, must have considered the facts as so found by the jury. These facts were as follows: The defendant's testator, at the time of the accident, in January, 1882, was a contractor, and was engaged upon several jobs, among which was one of excavating on East Seventy-Third street in New York City. He had a foreman, named Monahan, upon this job, who had the immediate charge of the work, and the direction of the men. The defendant's testator was at the job occasionally, and gave his instructions to the foreman, and not to the men personally. The plaintiff was one of the workmen upon this job, his work being the breaking of stone and drilling holes for blasts. He had had many years of experience in Italy, and some two years in this country, in working about excavating and blasting. He was acquainted with the use of powder, but not dynamite, as an explosive, used in blasting. On the day of the accident, a blast had been exploded, and it was discovered that the charge in one of the holes had not gone off, and the foreman directed the plaintiff to clear out this hole. It was loaded with dynamite below and powder above, but the plaintiff did not know there was dynamite in the hole, and the foreman did not tell him before he went to work to clean it out. While plaintiff was engaged in this work, the charge exploded, and he was injured. It is said there was proof that defendant's testator was actually present when the direction was given by the foreman to do this work. There might well be doubt, upon the evidence, as to whether defendant's testator was so present, but it is sufficient to say that the court charged the jury, without objection, that it was not claimed that the defendant's testator was himself personally negligent, but that the foreman was negligent, and the defendant's testator was chargeable with and liable for the negligence of the foreman. The case was submitted to the jury solely upon this theory, and not upon any theory that the defendant's testator was present when the direction was given to the foreman. The only question considered by the learned judge, as a ground for setting aside the verdict and ordering a new trial was whether, under the facts appearing in this case, as found by the jury, the defendant's testator was chargeable with and liable for the negligence of his foreman in directing plaintiff to perform this work without informing him of the presence of the dynamite in the hole as a part of the charge which failed to explode.

It seems to us that this question is determined by a line of decisions by the court of appeals which clearly upholds the decision of the learned trial judge in setting aside this verdict. Crispin v. Babbitt, 81 N. Y. 516; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466; Kimmer v. Webber, 151 N. Y. 417, 45 N. E. 860. From these cases we deduce certain legal propositions. The liability of the master, when the negligence is not his personal act or omission, but the immediate act or omission of a servant, turns upon the character of the act or omission complained of. If the co-servant, whose act or omission caused the injury, is at the time representing the master in doing the master's duty, the master is liable. If, on the other hand, he is

simply performing the work of servant in his character as a servant or employé merely; the master is not liable. The injury in the last case supposed would, as between the master and the servant sustain-ing the injury, be attributable solely to the immediate author, and not to the master; and the fact that the person whose negligence causes the injury is a servant of a higher grade than the servant in-jured, or that the latter is subject to the direction or control of the former, and is engaged at the time in executing the orders of the former, does not take the case out of the operation of the general rule stated, nor make the master liable. Loughlin v. State, 105 N. Y. 162, 163, 11 N. E. 372. The application of this rule to a particular case is sometimes difficult, and the boundary line between the act of a master and the act of an employé is sometimes quite vague and shadowy. Hankins v. Railroad Co., 142 N. Y. 421, 37 N. E. 467. It is this consideration that seems to make the various decisions of the court of appeals upon this question conflicting and inconsistent. Each case is considered upon its own peculiar facts, and the result to be reached in any particular case is dependent upon the view taken by the court as to the facts in such case. Thus, in the Loughlin Case, supra, the plaintiff was an employé of the state under the direction of the captain of the state boat, and was engaged in digging clay from a bank, and loading it on the boat. While he was at work under the bank, overhanging dirt which had been loosened by the captain, fell upon and injured the plaintiff, and it was held the injuries result-ed from the negligence of the captain as a co-servant of the plaintiff merely, and that the state was not liable. The negligence consisted in the captain setting the plaintiff to work under the bank, after he, the captain, had loosened the overhanging earth. The manner of proceeding with the work was committed to the captain. It in-volved the exercise of such discretion and judgment as is committed to a foreman. The captain was competent for his position, and the state furnished suitable appliances. It was the ordinary case of mis-management by a co-employé of a superior grade as to the manner of prosecuting an ordinary work in which he and other employés act-ing under him were at the time engaged. So in the case of Hussey v. Coger, supra, the plaintiff's intestate was an employé of the defend-ant, who, as a contractor, was engaged in repairing an ocean steamer. The defendant had for the performance of this work in his employ a superintendent, who had general charge of the job, and authority to engage all workmen under him, necessary to perform the contract, and the plaintiff's intestate was one of the men so employed. The defendant exercised no personal supervision over the work, but de-volved its whole management and control upon the superintendent, who was authorized to employ and discharge workmen, to regulate and direct the manner of their work, to provide the means and appli-ances necessary to its prosecution, and determine the time and place of its performance. He was employed by his master as his servant, but was delegated with the discharge of all those duties which, in the conduct of such work, rested upon the master to perform in respect to the persons employed thereon. He was a competent and fit man for superintendent and to have charge of the work to be done. The

plaintiff was engaged in the hold of the vessel at the time of the accident. The superintendent undertook to uncover the hatchway on the main deck, and had three men for that purpose, who acted under his immediate personal direction. They let the cover to the hatchway drop while removing it, and it struck the plaintiff, and caused his injuries. It was held that the master was not liable by reason of the place where he was at work being a dangerous one, or by reason of the failure to warn him that the place was about to become dangerous while they were removing the cover of the hatchway, because any act or omission in these respects related solely to the details and manner of executing the work, and were, therefore, the acts and omissions of a co-servant, and not of the master. And in Cullen v. Norton, supra, the plaintiff's intestate was employed in a cement quarry, engaged in drilling rock for blasting, under a foreman of defendant. Prior to the accident, 11 holes had been drilled, charged, fuse attached, and fired, but only 10 of them exploded. The foreman examined the other hole, found the fuse unconsumed, but did not remove it. The next morning he directed two of the workmen to drill holes within two feet of the undischarged hole, and ordered the plaintiff's intestate to drill 20 or 30 feet below. The exposed fuse shortly after in some way—apparently as a result of the work of the two men near by—took fire, and exploded, throwing out rock, which fell upon the plaintiff's intestate, and killed him. There was clearly negligence on the part of the foreman which caused the death. The only question was whether the defendant, the master, was liable for such negligence. If the negligent acts or omissions of the foreman were in his capacity as representing the master, then the defendant was liable; but, if they were in his capacity as an employé, the defendant was not liable. The court held the defendant was not liable, saying:

"The quarry was the place where the work was to go on, and the master was bound to make it a reasonably safe place for such work, considering its character, and the necessarily dangerous nature of the work itself. For the manner in which the persons employed in the quarry should themselves perform their work, the master was not liable. It is not claimed that the master did not furnish a proper place to work in the first instance,—that is, when the deceased was employed; and the quarry was as safe as any quarry is where frequent blasts are being fired off. But the manner of the performance of each of the various details of the work by which, as a whole, it was to be conducted, rested necessarily upon the intelligence and care and fidelity of the servants to whom these duties were intrusted. It can't be that every time a blast was exploded, and the men came back, the manner of their distribution for work was a duty of the master, and that the order of a foreman, mistakenly or negligently given, must be regarded as the order of the master in filling a duty to furnish a safe place to work in. It is, as it seems to me, a detail of the working or management of the business, the risks attending which have been assumed by the party taking employment. * * * In this case it is the ordinary one of choosing a method, a time, and a place for continuing the work in the quarry, and this involved questions of judgment and discretion committed in this instance, it would seem, to Doran. He, it may be conceded, mismanaged or misjudged the matter, and, after placing the deceased at work, negligently or improperly placed others at work too near the hole in which the powder had not exploded, and the consequence was this most unfortunate accident. The accident resulted from a negligent act done in the very course of the work, and by one of the fellow workmen of the deceased. The negligent act was a part of the performance of the work itself, the risks of which the deceased had assumed. The master had provided a competent and experienced foreman, who had been in his employment a number of years; and he was

not chargeable with the consequences of a place for work made dangerous only by the carelessness and neglect of a fellow servant (Hussey v. Coger, 112 N. Y. 614–618, 20 N. E. 556), although that fellow servant happened to be the foreman."

After considering and distinguishing many cases, the court added:

"The master furnished the mine as a place for labor, and it was solely on account of the manner in which the foreman, a fellow servant, performed the work, or directed it, that the accident happened, and happened in the course of the performance of the very kind and character of work which the plaintiff's intestate took the risk of by accepting employment."

The same general rule was applied in Kimmer v. Webber, supra, where the foregoing cases were referred to with approval. We think it must be said that the cases referred to are conclusive in support of the order from which this appeal is taken. Here the only negligence alleged is that the foreman set the plaintiff to work to clear out this hole, without disclosing the fact that there was dynamite in the charge. This was, however, but a detail of the work intrusted to the judgment and discretion of the foreman. The foreman, as well as the plaintiff, was a servant engaged in the performance of the work of blasting, preparing the holes, inserting the charges, exploding the blasts; and, when the charge did not go off, the cleaning out of the holes was a necessary and proper part of the general employment. The master furnished a competent foreman, all the tools and implements necessary, and gave the foreman power to employ and discharge men. He left the details of the work, the method to be employed, entirely to the foreman; and in carrying out the work the method adopted was that of the employé, rather than that of the master; and any negligent acts or omissions with reference thereto were not chargeable to the master, but were the acts of the co-employés, which the plaintiff assumed the risk of, as incidental to the dangerous work and employment upon which he entered, and in which he was engaged at the time of the accident.

Our conclusion is that the order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur.    PATTERSON and O'BRIEN, JJ., concur in result.