In the Matter of the Will of BERTHA L. HAMILTON, Deceased. ROBERT LAMBERTON et al., Appellants; THOMAS P. HEFFERNAN, as Executor of BERTHA L. HAMILTON, Deceased, et al., Respondents.

Third Department, May 8, 1946.

*Lombardo & Pickard,* attorneys (*Michael L. Lombardo, Clarence G. Pickard* and *Robert M. Dale* of counsel), for appellants.

*Rogerson, Clary & Hewes,* attorneys (*J. Russell Rogerson* of counsel), for executor-respondent.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General,* and *Henry S. Manley, Assistant Attorney-General* of counsel), for respondent.

FOSTER, J.. This is an appeal from a decree of the Surrogate's Court of Chautauqua County adjudging that a trust, created by the testatrix in the Nineteenth and Twentieth paragraphs of her will, for the establishment of an animal home or hospital and for the care, comfort and benefit of dumb animals therein, is a charitable trust and a valid testamentary disposition of her residuary estate. The opinion of the learned Surrogate, construing the testatmentary provisions under attack, is comprehensive and persuasive. We shall, therefore, state but briefly our reasons for agreement with his conclusions.

Testatrix left her homestead property at Ripley, N. Y., " for the purposes of an animal home or hospital," as a trust committee may decide; the remainder of her estate, and the income therefrom, " for the care and comfort of such animals " as the judgment of the committee may decide, to the end that the " home or hospital shall be maintained for the comfort and benefit of dumb animals." We are told that the decedent's residuary estate will exceed $400,000 in value.

No issue has been made of decedent's testamentary capacity. The trust she has attempted to establish is attacked upon the grounds that it is not for a charitable or benevolent use as contemplated by any statute (Personal Property Law, § 12; Real Property Law, § 113), and hence is void under the rules against perpetuities; that the beneficiaries are uncertain, and the trust provisions so indefinite as to permit commercial transactions for profit.

The decisive issue is whether the trust may properly be held to be one for a charitable use. If so, the rule against perpetuities does not apply (*Allen* v. *Stevens,* 161 N. Y. 122), nor, under the statutes does the lack of certainty as to beneficiaries affect its validity. There is no precise definition of a charitable use or trust. Essentially such a trust must carry the implication of a public benefit and must not be for a personal, private or

selfish end (*Matter of MacDowell*, 217 N. Y. 454). Many specific instances have been approved as charitable uses but we find no case in this State precisely in point as a precedent here. We turn, therefore, to a broader exposition of what may be termed charitable purposes: "A trust for the promotion of purposes which are of a character sufficiently beneficial to the community as to justify permitting property to be devoted forever to their accomplishment is charitable. * * * c. RELIEF OF ANIMALS. A trust to prevent or alleviate the suffering of animals is charitable. Thus, a trust for the prevention of cruelty to animals, *or a trust to establish a home for animals, or a trust for the prevention or cure or treatment of diseases or of injuries to animals, is charitable.*" (2 Restatement, Trusts, § 374.) (Emphasis supplied.)

We find nothing in the foregoing statements that conflicts with any prohibition expressed in this State by way of statute or otherwise, and hence we have no difficulty in adopting it. Moreover, and insofar as they may apply, we think them consistent with the common view that the care and ·comfort of animals are generally beneficial to mankind. Certainly the converse of this would not be regarded as true in this day and age. In the modern view consideration for dumb animals is regarded as commendable, and encouraged and promoted by numerous societies which are organized for this sole purpose. We hold, therefore, that the trust in question is a charitable one.

With the motives of testatrix we are not concerned (*Matter of Everson*, 268 App. Div. 425). If a definite charitable use may be found we are bound to uphold it and preserve the intention of the testatrix insofar as it is possible so to do (*Matter of Horner*, 237 N. Y. 489; *Matter of Gallien*, 247 N. Y. 195; *Matter of Durbrow*, 245 N. Y. 469; *Matter of Durand*, 250 N. Y. 45).

The contention that the real property left for the purposes of the trust may become a haven for wild animals, snakes and reptiles we regard as without merit. We think, as the Surrogate has expressed, that it was the intention of the testatrix to provide for the care of domestic animals. Some claim is made that the fund provided is inadequate to support the trust. This is purely conjectural at this stage, but even if it were an established fact it would not be sufficient to invalidate the trust since the doctrine of cy pres applies. Equally hypothetical is the possibility of commercialism arising out of the operation of the trust. Such a bare possibility is not sufficient to defeat an otherwise valid trust, and concerning this phase

of the matter we are mindful that the Attorney-General represents the beneficiaries, and it is his duty to see that the trust is properly enforced.

The decree should be affirmed, with costs to the respondent.

HILL, P. J. (dissenting). The applicable portion of section 12 of the Personal Property Law is identical with the original enactment in 1893 (ch. 701) and was construed in *Allen* v. *Stevens* (161 N. Y. 122, 141, 142) to re-establish in this State the doctrine of the English common law as to charitable uses, created by the statute 43 Elizabeth, chapter IV, and to reinstate the doctrine of *Williams* v. *Williams* (8 N. Y. 525, 558), that " the law of charitable uses as it existed in England at the time of the revolution, and the jurisdiction of the court of chancery over these subjects, became the law of this state on the adoption of the constitution of 1777; that the law has not been repealed, and that the existing courts of this state having equity jurisdiction are bound to administer that law." After the *Williams* case, decided in 1853, the opposite doctrine prevailed, culminating in the *Tilden* case (*Tilden* v. *Green,* 130 N. Y. 29) decided late in 1891. This was followed shortly by the act of the Legislature earlier mentioned which provided " No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall, in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same." It was determined in *Allen* v. *Stevens* (*supra*) that the Legislature also intended to reinstate the English common-law rule as to perpetuities which had been disapproved by the decisions after the *Williams* case.

In each of the cases cited, and all others adressed to a like subject, the trusts attempted or created were for the benefit of a class of persons or mankind generally. Here we are dealing with a bequest and devise where the charity or benevolence is " for the comfort and benefit of dumb animals " and the real property and income from a substantial sum of money is directed to be used in perpetuity " for a hospital or home for dumb animals, and that there be placed upon the front of the house upon said property, an appropriate sign, containing the following words: ' Hamilton Hospital for Animals.' "

*Matter of Browning* (165 Misc. 819, affd. 254 App. Div. 843, affd. 281 N. Y. 577) provided that a fund be paid " to such man or woman throughout the world " or an organization that accomplished " preeminent results " in " The prevention of cruelty

to children or animals, or the promotion of peace and international harmony '' or '' increased production and improvement of fish, birds or animals; the conservation of forests; the irrigation of arid lands; the increase or improvement of crops, flowers or plants.'' There were other purposes, but only the two quoted had any reference to animals. There the beneficiaries were persons or groups that studied and developed ideas and plans. Here the benefactions have no relation to mankind. The court of last resort in this State has recently construed the meaning of the terms philanthropic and eleemosynary used in a zoning ordinance, and has determined that they are not descriptive of a dog shelter or pound. (*Westchester County S. P. C. A.* v. *Mengel,* 292 N. Y. 121.)

All of the authorities called to our attention, as well as authors of texts upon trusts dealing with the meaning of the words charitable and benevolent under the common law of England and here before the Revolution and since, contemplate and assume a benefaction to the human group.

The courts of this State have revitalized the ancient law which applied only to benefactions to mankind. Chief Judge PARKER, in the prevailing opinion in *Allen* v. *Stevens (supra),* writing and determining that the Act of 1893 not only disapproved the cases decided after the *Williams* case as to indefiniteness, but also as to perpetuities, says: '' That he [Fowler on Charitable Uses] is right in saying that the legislature ' designed to restore the ancient law touching charitable uses for uncertain persons ' seems unquestionable, and it appears to be reasonably clear, from a reading of the entire act, that the legislature designed to restore the law governing the administration of such trusts as well.'' (P. 142.) An approval of the trust here involved would not only restore the ancient law concerning '' persons '' but it would include benefactions in other fields. The sentiments of testatrix were humane and would be regarded by many as highly praiseworthy. However, the arguments and logic which sustain the desirability and legality of the perpetual application of income from invested funds and the use of real property for relief and aid to the unfortunate of the human race, or to promote their happiness or advance their mental attainments, do not apply to the benefaction, care and relief of dumb animals. An extension of the doctrine beyond the original limits may not be made by a court that is bound by precedents and pronouncements by courts of last resort.

The decree should be reversed and a determination made that the **Nineteenth** paragraph of decedent's will is void.

Heffernan, Brewster and Lawrence, JJ., concur with Foster, J.; Hill, P. J., dissents, in an opinion.

Decree affirmed, with costs to the appellants and respondent payable out of the estate.